## DONALDSON v STATE OF FLORIDA

Case No. 88-145-AC (A) 02 "T" (County Court Case No. 87-208076-TT A04)

Fifteenth Judicial Circuit, Palm Beach County

December 6, 1988

### APPEARANCES OF COUNSEL

Office of the Public Defender, for appellant.

Office of the State Attorney, for appellee.

### OPINION OF THE COURT

JAMES T. CARLISLE, Circuit Judge.

This is a case of the cart before the horse, or of trying to place the

**53**

shoe on the wrong foot. The issue presented is the scope of the predicate necessary to introduce evidence of a breathalyzer reading.

Appellant was charged with driving under the influence (DUI). Depty Golson was called by the State and testified that he had a valid permit to operate a breathalyzer at the time he administered the test; that he followed the check list furnished by the Department of Health and Rehabilitative Services; that he observed the defendant for twenty minutes prior to administering the test and determined defendant did not put anything into his mouth nor regurgitate. He also testified as to the type of machine used, but the answer was inaudible. (T. 36) Because the issue was not raised on appeal, I assume the answer was that the machine was one approved by HRS.

Appellant objected on the ground the State did not produce the maintenance records. The trial court admitted the test results because the testing showed substantial compliance pursuant to § 316.1934(c)(3) F.S.

The real issue presented by this case is how many hoops does the State have to jump through in order to lay a sufficient predicate to admit the breathalyzer. The State contends there are only 3 hoops, i.e.: a licensed operator, compliance with the check list, and an approved instrument.

On the other hand, Section 10D-42.024 of the Code of State Regulations, requires:

"(1)

General Rules

(a)

Chemical test instruments used in the breath method must be kept in a suitable location which should only be accessible to an authorized technician and such other personnel as may be designated by the technician.

(b)

Test kits must be stored in a clean, dry location.

(c)

Chemical test instruments and devices used in the breath method shall be inspected at least once each calendar month by a technician to insure general cleanliness, appearance and accuracy.

(d)

Required logs will be inspected monthly by a technician to insure

54

that proper records are being made." In addition, courthouse lore seems to require much additional silliness. Each time an argument is made attacking the accuracy of the breath testing results or the reliability of the equipment, the State feels compelled to respond from that day forward as part of the predicate. Thus we see prosecutors attempting to show there is no possibility of radio frequency interference and whether the amperage and the wattage supplied by the electrical wall socket remained constant and within acceptable limits. This even when those defenses are not raised. I was recently treated to the argument that the .50 ml. testing beakers used to mix a simulated breath sample of a known reading for the monthly accuracy test had not themselves been approved as accurate by the National Bureau of Standards, as required by § 531.39 F.S. I expect anytime to hear evidence being presented that the operator's chronograph used in observing the subject for 20 minutes was not in such an accord with the great sidereal movement as to be absolutely accurate.

This simply is not required. Other instruments, the accuracy of which are of greater moment, are not subject to such scrutiny, e.g.: navigational instrument in aircraft need only be accurate within plus or minus 4 degrees. Laboratory instruments used in hospitals are not subject to such rigorous scrutiny. Girders supporting great bridges and buildings are cut to length without comparing the ruler with the Bureau of Standards.

More than unnecessary, it is a waste of time. The Florida Rules of Criminal Procedure provide the most liberal discovery procedure available anywhere. To require the State to provide testimony as to every nut, bolt, diode and resistor prior to admitting the test results can lead to interminable predicates. I have suffered through days of such testimony. On the other hand, should discovery reveal some lapse or error, it can be quickly brought to light by a Motion to Suppress.

Finally, § 316.1934(3) F.S. provides that a chemical analysis of a person's breath must have been performed only "substantially in accordance with the methods approved by the Department of Health and Rehabilitative Services." The Statute further provides that any insubstantial differences between the approved techniques and actual procedures "shall not render the test or test results invalid." In *Ridgeway v State,* 514 So.2d 418 (Fla. 1st DCA 1987), no inspection of the breathalyzer machine was made in May of 1986. Ridgeway was given the test 39 days after the last inspection. Despite the injunction of 10D-42.023, that instruments be inspected at least once each calendar month, the First District Court of Appeal held that:

**55**

"In the absence of evidence that the delay was of crucial significance the failure to timely inspect the machine did not constitute a substantial deviation from the rule which would warrant an invalidation of the test results."

Given the tolerance accorded departures from the Rule commanded by the substantial accordance clause of Section 316.1934(3) F.S., to require proof that the maintenance had been faithfully performed and that the device and its power supply,as well as other instruments themselves used to test the machine were in perfect order, is to send the State and the Court on a fool's errand. It is much more efficient to require defense counsel to point out any departures in a Motion to Suppress. It is, therefore:

ORDERED the judgment of the trial court is affirmed.

DONE AND ORDERED this 6th day of December, 1988, at West Palm Beach, Palm Beach County, Florida.